# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

ANTONIO WRIGHT
ADC#148629                                                                                          PETITIONER

VS.                              5:13CV00210 KGB/JTR

RAY HOBBS, Director,
Arkansas Department of Correction                                                  RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following Proposed Findings and Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Baker can adopt this Recommendation without

independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Room A149
> Little Rock, AR 72201-3325

## I. Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner, Antonio Wright ("Wright"). *Doc. 2*. Before addressing Wright's habeas claims, the Court will review the procedural history of the case in state court.

On September 30, 2009, a Columbia County jury convicted Wright of: (1) second-degree murder; and (2) possession of a firearm by a felon. *Doc. 7-2*. At trial, the state relied on strong direct evidence of Wright's guilt:

> The State's evidence included testimony by Tomeca Snell, Barbara Bell, Leroy Harris, and Detective Todd Dew. Snell testified that she was in a park when Wright and two other men walked up to Parker, that there was a conversation and Wright shot Parker, and that Snell heard only one shot. Bell testified that she saw Wright shoot Parker. Harris testified that he observed no act by Parker that would have provoked Wright, and Wright shot again. Detective Dew testified that he did not interview Wright while investigating the case because he thought it would not be productive in light of what officers on the scene had said about Wright's demeanor.
>
> Wright testified in his own defense, explaining what had occurred when he and the victim encountered one another in a park:

> I saw Rod Parker, he was mouthing some words.... I went over to him. Before I could finish what I was saying he pushed me. Then Mario Blake jumped up and tried to get him to calm down. I shoved Rod back and then he hit me. Then we started fighting. I was hit twice in the back of my head. So I pulled out the gun. I fired one single shot. I did that because I feared for my life. I was being jumped on.... He was coming at me until I fired.

> He stated that he stopped shooting after the first shot, and he reiterated on cross-examination that he was the one who fired the gun.

*Wright v. State*, 2012 Ark. App. 389, 2012 WL 1432381 (April 25, 2012). He received an aggregate 65-year sentence.[1] *Id.*

Wright appealed to the Arkansas Court of Appeals. His sole argument was that the trial court erred in denying his motion for a new trial. On April 25, 2012, the Court affirmed. *Wright v. State*, 2012 Ark. App. 389, 2012 WL 1432381 (April 25, 2012).

On June 26, 2012, Wright filed a *pro se* Rule 37 Petition, asserting ineffective assistance of counsel claims. *Doc. 7-6*. On October 17, 2012, the trial court entered an Order denying Rule 37 relief. *Doc. 7-7*. On November 14, 2012, Wright filed a Notice of Appeal. *Doc. 7-5 at 4*. However, because Wright failed to lodge the record with the Arkansas Supreme Court, his appeal was dismissed.

---

[1] Wright was charged with first-degree murder, but the jury convicted Wright of the lesser-included offense of second-degree murder.

At the time Wright committed the crimes, he was on probation for a 2005 first-degree battery conviction. *Doc. 7-8*. Prior to trial, the state moved to revoke his probation. The parties agreed to a procedure where the trial court would consider the evidence at trial to separately decide the question of Wright's probation revocation. *Trial Tr. 191*. After the jury convicted Wright, the trial court revoked Wright's probation. *Trial Tr. 887*. The trial court imposed a five-year sentence on the probation revocation, running concurrent with the 65-year sentence. *Doc. 7-8*.

On July 8, 2013, Wright initiated this habeas action. *Doc. 2*. In his Petition, he argues that: (1) he was entitled to a new trial because the prosecution withheld *Brady* material; (2) his lawyer was ineffective for failing to get the trial court to sever the murder and felon-in-possession charges; and (3) his lawyer was ineffective for allowing the trial court to decide the pending probation revocation case immediately after the jury returned its guilty verdict. *Id.* According to Respondent, Ray Hobbs, Wright's habeas claims either: (1) fail on the merits; or (2) are procedurally defaulted. *Doc. 7*.

For the reasons discussed below, the Court recommends that the Petition be denied, and that the case be dismissed, with prejudice.

## II. Discussion

### A. Standard of Review for Habeas Corpus Relief Under the Antiterrorism and Effective Death Penalty Act ("AEDPA")

A federal court will not grant habeas relief unless a state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court decision is "contrary to" clearly established federal law if it reaches a conclusion opposite that of the Supreme Court on a question of law, or reaches a decision contrary to the Supreme Court on materially indistinguishable

facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of federal law when it identifies the correct legal rule, but unreasonably applies it to the facts. *Id.* at 407."A state court's application of clearly established federal law must be objectively unreasonable, not merely incorrect, to warrant the granting of a writ of habeas corpus." *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011).

Finally, the state court's findings of fact are presumptively correct, and the habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011) (quoting 28 U.S.C. § 2254(e)(1)).

    B.    **Analysis of Petitioner's Habeas Claims**

        1.    **The State's Failure to Disclose *Brady* Material Prior to Wright's Trial**

According to Wright's testimony, he shot the victim, Roderick Parker ("Parker"), in self-defense. *Trial Tr. 772-74*. He testified that, on May 25, 2009, he was at Southside Park in Magnolia, talking to some girls. Parker approached him and began "mouthing[.]" *Trial Tr. 772*. Parker allegedly shoved him, Wright shoved back, "and that's when he [Parker] hit me." *Trial Tr. 773*. "Before you know it, we're fighting. Out of the blue I was hit twice like in the back of the head and that's when I pulled out the gun." *Trial Tr. 773*. Because he "feared for his

5

life," Wright testified that he fired a single shot, and then Parker backed up and fell down. *Trial Tr. 773-74*.

Several days after Wright's conviction, his lawyer was preparing for trial in another criminal case in which he represented Roland Jamerson ("Jamerson"). As part of the discovery in Jamerson's case, the prosecutor provided Wright's attorney with a videotaped statement from a jailhouse informant, Robert Alexander ("Alexander"). In this videotaped statement, which was recorded on February 8, 2010, Alexander told Magnolia police detectives about statements that Jamerson made to him while they were detained together in the Columbia County jail. Alexander also told the detectives about statements that Wright made to him about the shooting of Roderick Parker.[2]

On November 19, 2010, Wright's trial counsel filed a Motion for New Trial, arguing that the state committed a *Brady* violation by failing to turn over Alexander's videotaped statement during discovery in Wright's case. *Trial Tr. 141*. After noting that the state's failure to disclose Alexander's videotaped statement to Wright's trial counsel was a *Brady* violation, the trial court held that, because

---

[2] Alexander's February 8, 2010 videotaped statement was made seven months before Wright's September 29-30, 2010 trial. On the videotape, Alexander tells the detectives what Wright said to him and a group of other detainees in the Columbia County jail. According to Alexander, Wright said that "they [Wright and Parker] had been arguing and they had an altercation prior. Then they all went to the park and they got to arguing at the park and the dude [Parker] was telling Quez [Wright] . . . 'Man, I'm not scared of you. Everybody else is scared of you,' because they know Quez [Wright] had a reputation for shooting people . . . Instead of arguing the guy [Parker] ended up slapping Quez [Wright] and when the guy slapped him, . . . Quez [Wright] came out of the back pocket and . . . [p]opped him, shot him right here in the stomach [indicating]. He say he stood over him and got ready to shoot him again, but he looked and seen so many witnesses around he told him, 'I ought to,' he said 'I ought to pop you again.'" *DVD Interview Tr. 43-44.*

Wright had not shown a "reasonable probability" that the outcome of trial would have been different had the videotape been produced to him, it was not prejudicial and a new trial was not warranted. *Trial Tr. 162-65*.

On direct appeal, Wright argued that the trial court erred in denying his Motion for New Trial based on the *Brady* violation. The Arkansas Court of Appeals rejected the argument:

> Wright has failed to show that he was so prejudiced by the alleged discovery violation that there is a reasonable probability the outcome of the trial would have been different. The information, Wright's own statements, was not exculpatory in light of the fact that Wright admitted to the shooting. Moreover, Wright already had knowledge of the information because it was a statement he had made. He suffered no prejudice by the State's failure to disclose the informant's statement in discovery, and we find no abuse of the trial court's discretion in the refusal to grant a new trial.

*Wright v. State*, 2012 Ark. App. 389, 2012 WL 1432381 (April 25, 2012).

Wright now contends that he is entitled to federal habeas relief based on this *Brady* violation.[3] He argues that, without Alexander's videotaped statement, he "lost valuable opportunities to find valuable and mitigating evidence," and "lost any opportunity . . . to call the informant as a witness[.]" *Doc. 2 at 4*.

Alexander's videotaped statement contains some marginally "favorable evidence," along with a considerable amount of unfavorable inculpatory evidence.

---

[3] To establish a *Brady* violation, a habeas petitioner must show that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material. *United States v. Spencer*, 753 F.3d 746, 748 (8th Cir. 2014). As to the third element, "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.*

However, as explained by both the trial court and the Arkansas Court of Appeals, notwithstanding this *Brady* violation, there is *not* a reasonable probability that the result of Wright's trial would have been different if Alexander's videotaped statement had been disclosed to Wright's attorney.

In Alexander's videotaped statement, he tells the detectives what Wright told him. Obviously, at the time of his trial, Wright *already knew* what he had said to other detainees in the Columbia County jail about his confrontation with Parker. Thus, at most, the exculpatory portion of Alexander's videotaped statement was a hearsay version of Wright's own self-serving testimony at trial; *i.e.*, he shot the unarmed victim after getting into a fight with him. Other witnesses at trial testified that they saw Wright shoot the victim *without provocation*. The jury clearly rejected Wright's testimony that he shot the victim in self-defense.

Under the deferential standard of review this Court must apply in habeas cases, it concludes that the reasons given by the Arkansas Court of Appeals for rejecting Wright's *Brady* claim were neither "contrary to" nor an "unreasonable application of clearly established federal law," nor were they based on an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d) and (e). Accordingly, Wright's habeas claim, based on the *Brady* violation, is without merit.

### 2. Wright's Attorney's Alleged Failure to "Obtain a Ruling" on the Motion to Sever the Murder and Felon-In-Possession Charges

Next, Wright argues that his attorney was ineffective for: (1) failing to "obtain a ruling" on his motion to sever the first-degree murder charge from the felon-in-possession of a firearm charge; and (2) putting him on the stand to testify, which opened the door to the introduction of evidence of his prior felony conviction for first-degree battery for shooting someone else. *Doc. 2 at 5*.

Wright's arguments badly mischaracterize how the severance issue was actually addressed by the court. His lawyer filed a pretrial motion to bifurcate the first-degree murder and felon-in-possession charges. *Trial Tr. 31*. At a pretrial hearing, the trial court *granted* the motion, and the State agreed that it would *not* put on any evidence of Wright's prior felony conviction in the murder trial. *Trial Tr. 178-79*. However, the prosecutor and Wright's attorney both agreed that, *if* Wright testified in his murder trial, his prior felony conviction would be admissible.

During voir dire, Wright's attorney informed prospective jurors (in groups of three) that: (1) Wright had decided to testify and tell his side of the story; and (2) they would find out about Wright's prior battery conviction for a similar shooting. He then extensively questioned the prospective jurors about whether they could fairly consider the evidence with knowledge of the prior felony conviction. When

9

Wright later testified at trial, his attorney, on direct examination, elicited from him the facts surrounding his earlier battery conviction. During the jury instruction conference, Wright's attorney and the prosecutor agreed to submit the felon-in-possession charge to the jury because Wright's prior felony conviction had been introduced into evidence.

In Wright's Rule 37 Petition, he argued that his lawyer "disregard[ed] the motion to sever" and "open[ed] the door for the state" by calling him to testify. *Doc. 7-6 at 3-5*. The trial court denied Rule 37 relief, noting that "defendant and his trial counsel had made the tactical decision that defendant should testify in his own defense, and that decision opened the door for an examination of his prior felony record. Trial tactics are not subject to review in a Rule 37 proceeding." *Doc. 7-7 at 2*.

As noted earlier, Wright failed to appeal the denial of Rule 37 relief to the Arkansas Supreme Court. Ordinarily, a habeas petitioner procedurally defaults a claim that is not presented to the state's highest appellate court. However, in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the Court recognized that, in a narrow range of habeas cases, a petitioner can rely on his lack of counsel or ineffective assistance of counsel, which occurred at *the initial step of post–conviction review*, to establish "cause" to excuse his procedural default of an ineffective-assistance-of-counsel claim. The Eighth

Circuit has made it clear that, in § 2254 habeas claims arising in Arkansas, the *Martinez* exception only allows a district court "to find 'cause,' thereby excusing a habeas petitioner's procedural default ... where (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014); *see also Sasser v. Hobbs*, 735 F.3d 833, 853 (8th Cir. 2013).

Wright appears to have satisfied the second and third elements of *Dansby* because he lacked counsel during the state post-conviction proceeding, and it was the "initial" proceeding in which he should have raised his ineffective assistance of counsel claim. However, to invoke the *Martinez* exception, Wright must also satisfy the first element of *Dansby*, which requires him to establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one."[4] *Martinez*, 132 S. Ct. at 1318; *Dansby*, 766 F.3d at 834.

For an ineffective-assistance-of-counsel claim to have "some merit," a prisoner must establish that his attorney's conduct "fell below an objective

---

[4] According to the Court in *Martinez*, for an ineffective-assistance-of-counsel claim to be "substantial," the habeas petitioner must demonstrate that his claim: (1) has "some merit"; *and* (2) is supported by at least some facts. *Martinez*, 132 S. Ct. at 1318-19. If a habeas petitioner is unable to satisfy either part of this "substantiality test," his ineffective-assistance-of-counsel claim is procedurally defaulted and cannot be considered by a federal court in a § 2254 habeas action.

standard of reasonableness ... under prevailing professional norms," *and* that the "professionally unreasonable" conduct of counsel "prejudiced the defense."[5] *Strickland v. Washington*, 466 U.S. 668, 687-88, 691-92 (1984). If a prisoner fails "to establish either *Strickland* prong [it] is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).

Thus, to determine if Wright's ineffective-assistance-of-counsel claim has "some merit," this Court must decide: (1) if Wright's trial counsel's alleged misconduct "fell below an objective standard of reasonableness"; and (2) if so, whether it "prejudiced the defense." If the *Strickland* standard is not met, as a matter of law, Wright's ineffective-assistance-of-counsel claim is "without merit" and cannot be deemed to be a "substantial" claim under *Martinez*.

During Wright's trial, the prosecution introduced overwhelming evidence that Wright shot the unarmed victim. This undoubtedly led Wright's attorney to make the *tactical decision* to try to counter that evidence by having Wright testify that he shot the victim in self-defense.[6] *See United States v. Thomas*, 992 F.2d 201, 205 (8th Cir. 1993) ("Trial counsel's decisions concerning the theory of defense, testimony of witnesses and whether [defendant] should testify are all tactical decisions. We cannot rely on hindsight to evaluate defense counsel's trial

---

[5] The defendant is prejudiced by the deficient performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, *infra* at 694.

[6] Wright also called other witnesses who testified that Wright and Parker were in a fight before Wright shot him. Wright's sister testified that Parker hit Wright first. *Trial Tr. 760*.

strategy[.]") (internal quotations omitted). Anticipating that he would need to call Wright to testify during the trial, his attorney told the jury during voir dire that Wright would be a witness and he asked prospective jurors if they could fairly consider the evidence in light of Wright's prior conviction for battery. Finally, based on the overwhelming evidence of Wright's guilt, even if Wright had *not* testified and the jury had *not* learned about his prior conviction for battery, there is *not* a reasonable probability that the result of trial would have been different.

Wright has not established a "substantial" and meritorious ineffective-assistance-of-counsel claim arising from the way in which his trial counsel handled the motion to sever the murder and felon-in-possession charges. Accordingly, the *Martinez* exception cannot excuse Wright's procedural default in failing to appeal the denial of Rule 37 relief to the Arkansas Supreme Court. Thus, this Court is barred from considering the merits of this ineffective assistance of counsel claim.

 **3. Wright's Attorney's Alleged Failure to Object to the Court Deciding Wright's Probation Revocation Immediately After the Jury Returned Its Verdict**

Finally, Wright argues that his lawyer was ineffective when he "failed to object to the [probation] revocation hearing being held in the same day of trial." *Doc. 2 at 6*. He argues this somehow "prejudiced" his defense and "exposed the jury" to his prior bad acts. While Wright raised this claim in his Rule 37 Petition,

he did not appeal the denial of Rule 37 relief to the Arkansas Supreme Court. Thus, this claim is procedurally defaulted unless the *Martinez* exception applies.

Contrary to Wright's suggestion, the jury heard nothing about the pending probation revocation proceeding. In the interest of efficiency the parties simply agreed to allow the trial court to decide if Wright's earlier sentence of probation, for committing first-degree battery, should be revoked based on the same evidence introduced during Wright's murder trial. *Tr. 882-883. After* the jury returned its verdict, the trial court revoked Wright's probation and sentenced him to five years in prison to run concurrently with the jury's sixty-five year sentence for second-degree murder and being a felon in possession of a firearm. This procedure for deciding if Wright's earlier probationary sentence should be revoked in no way prejudiced Wright's trial on charges of first-degree murder and being a felon in possession of a firearm.

Wright has not established a "substantial" and meritorious ineffective-assistance-of-counsel claim arising from the conduct of his attorney, with regard to the procedure she agreed the court should follow in deciding if Wright's probation should be revoked. Thus, the *Martinez* exception cannot be used by Wright to excuse his failure to raise and appeal that claim in his state postconviction proceeding; thereby resulting in his procedural default of that claim. Accordingly,

the Court is now barred from considering this ineffective assistance of counsel claim.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT the Petition for a Writ of Habeas Corpus be DENIED and this habeas action be DISMISSED, WITH PREJUDICE. IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

DATED this 26th day of January, 2015.

_____
UNITED STATES MAGISTRATE JUDGE